UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REDBOX+ INTERNATIONAL, LLC,

       Plaintiff,

v.                                       Case No. 8:23-cv-393-CEH-SPF

WASTE MANAGEMENT SOLUTIONS, INC.,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff RedBox+ International, LLC ("RBI") is franchisor of a roll-off dumpster and portable toilet rental business. Defendant Waste Management Solutions, Inc. ("Waste Management") is assignee of five RBI franchise agreements, which RBI terminated in January 2023 after Waste Management breached. RBI filed this case the next month, suing Waste Management for breach of its post-termination obligations under the franchise agreements and Lanham Act violations (Docs. 1, 10). In April 2023, RBI moved for – and the Clerk entered – a default against Waste Management under Rule 55(a) for its failure to respond to RBI's amended complaint (*see* Docs. 18, 19). Meanwhile, the District Judge adopted the undersigned's Report and Recommendation, granted RBI's preliminary injunction motion, and enjoined Waste Management from operating as a redbox+ franchise and from using redbox+ trademarks and dress (Docs. 11, 22, 24-25). Now, RBI moves for a default judgment and permanent injunction against Waste Management (Doc. 28). Despite being properly served, Waste Management did not respond to RBI's motion (and has not appeared in this litigation); the Court deems it unopposed. *See* L.R. 3.01(c), M.D. Fla. (2021).

The undersigned recommends RBI's motion for default judgment (Doc.28) be granted in part and denied in part.

## I.     BACKGROUND

Plaintiff RBI is a Michigan-based limited liability company (Doc. 10 ("Amended Cmplt.") at ¶ 1).  RedBox+ Franchising, LLC – RBI's immediate predecessor in interest – is a Pennsylvania limited liability company (*Id.* at ¶¶ 7, 15; Doc. 11-1, Melanie Parker[1] Affidavit ("Parker Aff.") at ¶ 4).  RedBox+ Franchising's business was granting redbox+ roll-off dumpster rental franchises to qualified franchisees nationwide (Amended Cmplt. at ¶ 7; Parker Aff. at ¶ 4).  It owned U.S.P.T.O. Registration No. 4,596,529 for the mark "redbox+".  RedBox+ Franchising had the exclusive license to use and license others to use this and other marks and had used them continuously since July 2017 (Amended Cmplt. at ¶¶ 8-9; Parker Aff. at ¶ 5).  Licensed franchisees signed franchise agreements that permitted access to the company's proprietary technology and business systems (Amended Cmplt. at ¶ 7).

On April 24, 2019, RedBox+ Franchising entered into five Franchise Agreements with Marco Alberto Fumei (*Id.* at ¶ 11; Parker Aff. at ¶ 9 and Ex. A ("Franchise Agmt.")).  Otherwise identical, each agreement covered a different Tampa-area territory and detailed (along with related operations manuals) the procedures, methodology, and standards for Fumei to follow in operating his redbox+ franchises, including a requirement to purchase equipment packages and pay initial franchise fees and royalties (Amended Cmplt. at ¶¶ 16-17).  Under the Franchise Agreements, RedBox+ Franchising maintained ownership of the redbox+ marks but granted Fumei licenses to use the marks during his franchise term (*Id.* at

---

[1]  Melanie Parker is RBI's Senior Vice President of Legal and Franchise Administration (Parker Aff. at ¶ 1).

¶ 13).  In exchange, Fumei agreed to use the redbox+ marks, "including without limitation trade dress, color combinations, designs, symbols, and slogans, only in the manner and to the extent specifically permitted" by the Franchise Agreements (Franchise Agmt. at § 6.6.3).

The Franchise Agreements permitted RedBox+ Franchising to terminate the agreements if Fumei failed to cure a breach within 15 or 30 days of receiving written notice (depending on the breach) (*Id.* at §§ 9.3-9.4).  If that occurred, Fumei was contract-bound to immediately cease all business operations, pay RedBox+ Franchising any unpaid fees, discontinue using redbox+'s proprietary marks, and stop holding himself out as a redbox+ franchisee (*Id.* at § 10.1).  Fumei also agreed to a two-year non-compete clause (*Id.* at § 7.4).

In July 2019, RedBox+ Franchising permitted Fumei to assign his franchise interests to Waste Management, a Florida corporation Fumei created and wholly owned (Parker Aff., Ex. C).  Fumei executed personal guarantees of Waste Management's liabilities to RedBox+ Franchising (*Id.*).[2]  RBI purchased RedBox+ Franchising's assets in June 2021, including its intellectual property and the five Franchise Agreements assigned to Waste Management (Amended Cmplt. at ¶ 15; Parker Aff. at ¶ 11).  Since taking over RedBox+ Franchising's operations, RBI has authorized 277 franchisees to operate redbox+ businesses across the country and has spent approximately $519,150 to advertise and promote the redbox+ marks and trade dress (Parker Aff. at ¶¶ 12-13).  By operation of the asset purchase, RBI now owns U.S.P.T.O. Registration No. 4,596,529, which is in full force and effect and is incontestable under 15 U.S.C. § 1065 (*Id.* at ¶ 11).

---

[2]  Fumei filed for personal bankruptcy protection in December 2022.  *See In re Marco Fumei*, No. 8:22-bk-05108-RCT (Bankr. M.D. Fla.).  His bankruptcy proceeding does not affect RBI's action against Waste Management.  In his bankruptcy schedules, Fumei states he has owned and been employed by Waste Management Solutions for the past four years.

In 2022, Waste Management failed to pay in full for an equipment package of containers and portable toilets (Amended Cmplt. at ¶ 21; Parker Aff. at ¶ 14). RBI sent Waste Management demand letters in June and September 2022 to no avail (Parker Aff., Ex. C). So, on December 8, 2022, RBI's counsel sent Waste Management a notice of default (*Id.*, Ex. D). When Waste Management did not respond (Parker Aff. at ¶ 17), RBI sued it for breach of contract in the United States District Court for the Eastern District of Pennsylvania (*Id.* at ¶ 18). *See RedBox+ Int'l, LLC v. Waste Mgmt. Sols., Inc. and Marco Alberto Fumei*, Civ. No. 22-4892 (E.D. Pa.).[3] That court granted RBI a $116,143.15 final judgment against Waste Management (Doc. 11, Ex. E).[4]

Then RBI's counsel sent Waste Management a termination notice on January 19, 2023 (*Id.* at Ex. F). This notice listed Waste Management's post-termination duties under the Franchise Agreements, including to immediately cease operating the redbox+ business, discontinue using redbox+ marks, and cease holding itself out a redbox+ franchisee (*Id.*). The next day – January 20, 2023 – Fumei emailed RBI's counsel: "Good afternoon, [f]ortunately for us, we have filed Chapter 13 so it's business as usual for redbox+ Dumpsters of Tampa."

---

[3] The Franchise Agreements contain a Pennsylvania choice of law provision and an Eastern District of Pennsylvania venue selection clause (Franchise Agmt. at §§ 12.1, 12.4). But Section 12.4 also states: "Nothing contained in this Agreement will prevent Franchisor from applying to and obtaining from any court having jurisdiction . . .a preliminary injunction . . . to safeguard and protect Franchisor's interests."

[4] This amount consisted of $67,183.84 in principal, plus $37,569.42 in interest, $879.89 in costs, and $10,510.00 in attorney's fees (Doc. 11, Ex. E). The undersigned has reviewed the billing records submitted by Plaintiff's counsel (Doc. 28-1), and there is no overlap between the attorneys' fees awarded by the district judge in the Eastern District of Pennsylvania case and the attorneys' fees Plaintiff seeks as the prevailing party in this action.

(*Id*. at Ex. G).[5]  He wrote he "will continue to operate the business" despite RBI's termination of the Franchise Agreements and will "sell the business or liquidate all assets before [RBI] can do anything." (*Id*.).  He emailed again four days later, reiterating that his franchise was "still in business" and "will continue to operate as a business and there is nothing you can do about it." (*Id*.).

The relationship between the parties unraveled from there: in February 2023, a neighboring redbox+ franchisee told RBI that Waste Management had dumped the contents of a redbox+ branded dumpster at Central Bible Chapel in Odessa, Florida and caused so much damage that the church filed a police report (*Id*. at Ex. H).  Then a motorist emailed RBI that a truck bearing the redbox+ mark hit his car and "drove off without stopping" on February 27, 2023 (*Id*. at Ex. I).  The motorist took a picture of the truck and, based on the phone number on the side, RBI determined it was operated by Waste Management (*Id*.).

That same month, RBI filed this case against Waste Management, alleging breach of post-termination obligations under the Franchise Agreements, trademark and trade dress infringement, and unfair competition (Docs. 1, 10).  RBI moved for a preliminary injunction against Waste Management under Rule 65(a) and the Lanham Act, 15 U.S.C. § 1116, seeking to enjoin Waste Management's allegedly infringing activities and continued breaches of its post-termination obligations under the Franchise Agreements (Doc. 11).  After a hearing where Defendant did not appear, the undersigned recommended the District Judge grant RBI's preliminary injunction motion (Doc. 22).  The District Judge agreed, adopted the undersigned's Report and Recommendation, and enjoined Waste Management from

---

[5]  Fumei may be referring to his personal bankruptcy filing, because there is no evidence that Waste Management has filed for bankruptcy in the Middle District of Florida.

"[o]perating its business in the five territories covered by the Franchise Agreements" and from "[u]tilizing redbox+ trademarks and/or trade dress." (Doc. 25 at 2).

At this juncture, RBI moves for a default judgment against Waste Management (Doc. 28) and requests permanent injunctive relief and attorney's fees and costs. Waste Management has not responded to the motion, and the time to do so has passed.

## II.   STANDARD OF REVIEW

"When a defendant has failed to plead or defend, a district court may enter judgment by default." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015) (citing Fed. R. Civ. P. 55(b)(2)). With the clerk's entry of a default under Rule 55(a), a defendant is deemed to admit a plaintiff's well-pleaded allegations of fact. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (citation omitted).[6] Before entering a default judgment under Rule 55(b), a district court must ensure that the well-pleaded allegations in the complaint state a substantive cause of action and that a substantive, sufficient basis exists in the pleadings for the relief the plaintiff seeks. *Id.*; *see also Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (defaulted defendant deemed to admit well-pleaded factual allegations but "is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (citation and quotations omitted). Entry of a default judgment under Rule 55(b) is warranted only where a sufficient basis exists in the pleadings. *Surtain*, 789 F.3d at 1245 (citation omitted).

Courts assess pleadings by a standard "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Id.* Namely, a court may enter a default judgment only

---

[6]  Unpublished opinions are not considered binding precedent but may be cited as persuasive authority.  11th Cir. R. 36-2.

where a pleading contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The district court wields wide discretion in entering a default judgment.  *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1576 (11th Cir. 1985).

## III.    DISCUSSION

Plaintiff's Amended Complaint alleges breach of contract, trademark infringement, trade dress infringement, and unfair competition, and Plaintiff seeks monetary damages against Waste Management as to each count (Doc. 10).  But in its motion for default judgment, "for purposes of simplifying matters and bringing this case to an efficient resolution, Plaintiff opts to seek only injunctive relief, attorneys' fees, and costs[.]" (Doc. 28 at 3, n.1).  Plaintiff requests a final judgment "permanently enjoining Defendant, ratifying and enforcing the termination of the Franchise Agreements, directing Defendant to comply with its post-termination obligations under the Franchise Agreements, prohibiting Defendant from continuing to operate and from using Plaintiff's trademarks and trade dress, and awarding Plaintiff its prevailing party attorneys' fees in the amount of $12,038.58 and costs in the amount of $484.75[.]" (*Id.* at 10).  By virtue of its default, Waste Management does not oppose this relief.

### A. <u>Liability</u>

### 1. **Breach of Post-Termination Obligations**

RBI's well-pleaded allegations establish that Waste Management breached its post-termination obligations under the Franchise Agreements.[7]   To begin, the Franchise Agreements contain a Pennsylvania choice of law provision (Franchise Agmt. at § 12.1).  Under Florida law, a contractual choice-of-law provision is enforceable "unless the law of the chosen forum contravenes a strong public policy."  *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1341 (11th Cir. 2005) (citation omitted).  This exception does not apply; the Court interprets the agreements under Pennsylvania law.

The elements of a breach of contract are: "(1) the existence of a contract, including essential terms; (2) breach of a duty imposed by the contract; and (3) resultant damages."  *Giannone v. Giannone*, 429 F.Supp.3d 34, 40 (E.D. Penn. 2019) (citing *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).   And "[t]he elements of a valid and binding contract are: (1) the manifestation of an intent to be bound by the terms of the agreement; (2) sufficiently definite terms; and (3) an agreement supported by adequate consideration."  *Id.* (citing *Johnston the Florist, Inc. v. TEDCO Const. Corp.*, 657 A.2d 511, 516 (Pa. Super. Ct. 1995)).

RBI has established Waste Management breached the Franchise Agreements under Pennsylvania law.   First, Melanie Parker's affidavit attaches a representative Franchise Agreement between the parties.   Waste Management was assignee of Fumei's rights and

---

[7] In recommending the District Judge grant RBI's preliminary injunction motion, the undersigned found that Plaintiff was substantially likely to succeed on the merits of each count (Doc. 22).  The District Judge adopted this analysis of the merits of Plaintiff's claims and incorporated it into her Order granting Plaintiff's preliminary injunction motion (Docs. 24, 25).  This Report and Recommendation draws heavily from that analysis.

obligations under the Franchise Agreements with RedBox+ Franchising (RBI's predecessor in interest).  Waste Management's failure to pay RBI for a shipment of containers and portable toilets prompted RBI to terminate the agreements (and RBI successfully sued Waste Management for this first breach in the Eastern District of Pennsylvania).  Termination triggered Waste Management's post-termination obligations under the agreements, including to cease operating as a redbox+ franchise.  Second, Waste Management breached these obligations.  Waste Management continues to operate as a redbox+ business; Fumei bragged about this in an email to RBI and, by failing to respond to RBI's motion, concedes it.  Third, RBI submitted evidence that Waste Management's post-termination breaches have damaged and likely will continue to damage its reputation: photographs of the contents of a redbox+ dumpster Waste Management dumped at a church without permission and an email from a motorist whose car Defendant hit with a truck bearing RBI's mark.  Defendant disputes none of this.

### 2.  Infringement and Unfair Competition

The evidence establishing RBI's breach of contract claim likewise establishes its infringement and unfair competition claims.  To prevail on a trademark infringement claim under 15 U.S.C. § 1114 based on a federally registered mark, "the registrant must show that (1) its mark was used in commerce by the defendant without the registrant's consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive." *Optimum Tech., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (citation and quotations omitted); *see also Dunkin' Donuts Franchised Rests. LLC v. D&D Donuts, Inc.*, 566 F.Supp.2d 1350, 1360 (M.D. Fla. 2008) (quoting *Dieter v. B&H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989)).  To prove trade dress infringement, RBI must establish

that "the trade dress of the two products is confusingly similar, that the features of the trade dress are primarily non-functional, and that the trade dress has acquired secondary meaning." *Dunkin' Donuts*, 566 F.Supp.2d at 1360 (quoting *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir. 1983)).

Unfair competition can be a broader claim than infringement but also "calls on the plaintiff to show confusing similarity between the services." *Id.* (quoting *Freedom Sav. & Loan Ass'n v. Way*, 757 F.2d 1176, 1186 (11th Cir. 1985)). If an unfair competition claim is based on infringement, as it is here, the elements "are the same" and the claim is "practically identical to an infringement claim." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1026 n. 14 (11th Cir. 1989). Consequently, the set of facts that enables Plaintiff to recover for trademark infringement under 15 U.S.C. § 1114(a)(1) also results in its recovery for unfair competition under 15 U.S.C. § 1125(a). *See Babbit Elec., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994).

Additionally, in the franchisor/franchisee context:

> [T]he Lanham Act's requirement that a franchisor demonstrate that *unauthorized* trademark use occurred to prevail on the merits of a trademark infringement claim against a franchisee necessitates some type of showing that the franchisor properly terminated the contract purporting to authorize the trademarks' use, thus resulting in the *unauthorized* use of trademarks by the former franchisee.

*Sylvan Learning Inc. v. Learning Sols., Inc.*, 795 F.Supp.2d 1284, 1291-92 (S.D. Ala. 2011) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1308 (11th Cir. 1998)) (emphasis in original). In other words, in assessing RBI's infringement claims, the Court must determine first if RBI has shown that it properly terminated the Franchise Agreements.

The Court determines that it has. Waste Management defaulted under the agreements by failing to pay RBI for containers and portable toilets. RBI sent Waste Management

10

demand letters in June and September 2022 to no avail (Parker Aff., Ex. C).  On December 8, 2022, RBI's counsel sent Waste Management a notice of default (*Id.* at Ex. D).[8]  The notice stated:

> Pursuant to Section 4.8 of the Franchise Agreements, you were required to purchase Initial Equipment Packages from Franchisor.  In total, you were required to purchase fifty-six (56) container, and sixty-four (64) portable toilets, among other equipment, from Franchisor's predecessor.  You failed to pay Invoice No. 1169 for the second shipment of eight (8) containers and sixteen (16) portable toilets, with a total cost of $67,183.84 due to Franchisor.  <u>Therefore, you are in DEFAULT of the Franchise Agreements</u>.  Pursuant to Section 9.3.1, failure to pay sums owed to Franchisor is a default that is grounds for termination following a fifteen (15) day period in which you can cure the default.  We have sent you two letters, dated June 13, 2022 and September 1, 2022, demanding payment.  To date, you have not cured the default.  <u>Your Franchise Agreements are hereby subject to immediate termination pursuant to Section 9.2.5</u>.

(*Id.*).  When Waste Management did not respond (Parker Aff. at ¶ 17), RBI sued it for breach of contract and obtained a $116,143.15 final judgment against Waste Management (*Id.*).  *See RedBox+ Int'l, LLC v. Waste Mgmt. Sols., Inc. and Marco Alberto Fumei*, Civ. No. 22-4892 (E.D. Pa.).

Meanwhile, abiding the steps detailed in the Franchise Agreements, RBI's counsel sent Waste Management a notice of termination on January 19, 2023 (*Id.* at Ex. F).  The notice stated:

> As of the date of this letter, you have neither cured the default described above nor responded to the complaint.  Accordingly, this letter shall serve as notice that your failure to cure the defaults as outlined in the Default Letter has resulted in the termination of the above referenced Franchise Agreements, and your rights as a redbox+ franchisee, effective immediately.

---

[8] Specifically, under Section 9.3.1, RBI had the right to terminate the agreements since Defendant failed to pay its outstanding invoice despite 15 days' notice.  And once Defendant ignored two notices from RBI, RBI also had the right to terminate the agreements without the opportunity to cure under Section 9.2.5 for repeated breaches.

(*Id*.).  This notice listed Waste Management's post-termination duties under the Franchise Agreements, including to immediately discontinue using redbox+ marks and trade dress (*Id*.). The notice concluded: "Should you fail to abide by the Post-Termination Obligations as required, we will have no choice but to commence legal action against you to enforce our legal rights including . . . an injunction . . ." (*Id*.).  Under these circumstances, RBI properly terminated the agreements.

Next, RBI has shown it owns a valid mark.  It identified the United States Patent and Trademark Office registration number of its redbox+ mark, and it submitted with its preliminary injunction motion Melanie Parker's affidavit, who attests that RBI purchased RedBox+ Franchising's intellectual property (including the redbox+ mark and trade dress) in 2021 (Parker Aff. at ¶¶ 5, 11).  RBI (as did its predecessor) has the exclusive license to use and license others to use its marks, and it has used them continuously since July 2017 (*Id*. at ¶ 5).

Regarding RBI's trade dress, Parker attests it includes "arbitrary embellishments" such as "the signage, lettering style, red, black, and white color scheme, and exterior appearances of dumpsters and trucks[,]" and is nonfunctional (*Id*. at ¶¶ 6-7).  After authorizing hundreds of franchisees to use this distinctive trade dress and expending hundreds of thousands of dollars in advertising and promoting the redbox+ marks and dress (*Id*. at ¶ 12), RBI's trade dress has acquired secondary meaning.  And Waste Management acknowledged in the Franchise Agreements that "all rights relating to the Proprietary Marks and Patents are reserved by Franchisor, except for Franchisee's license to use the Proprietary Marks and Patents only as specifically and expressly provided in this Agreement. . . . Franchisee shall not at any time acquire any rights in the Proprietary Marks or Patents." (Franchise Agmt. at § 6.6.1).

RBI has also presented undisputed evidence that Waste Management continues to use RBI's mark and trade dress after RBI properly terminated the Franchise Agreements. Waste Management dumped the contents of a full redbox+ dumpster at a church without permission and was involved in a hit-and-run accident in a redbox+ truck. Fumei admitted in emails to RBI he intends to continue operating post-termination and – inexplicably – suggests his personal bankruptcy filing shields his company's infringing activities.

Finally, regarding likelihood of confusion, seven factors are relevant: (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of the advertising methods; (6) the defendant's intent; and (7) actual confusion. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1220 (11th Cir. 2008) (quoting *Alliance Metals, Inc. of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000)). Considering these factors, the Court finds that Waste Management's unauthorized use of RBI's mark and trade dress is likely to confuse consumers. *See McDonald's Corp.*, 147 F.3d at 1308 (when terminated franchisee continues operating as if it is still a licensed franchisee, there exists "a substantial likelihood of confusion – indeed, a certainty of confusion – of the terminated franchisees' products with the franchisor's certified products."); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir. 1983) ("The unauthorized use of a trademark which has the effect of misleading the public to believe that the user is sponsored or approved by the registrant can constitute infringement."). RBI has established each element of its infringement and unfair competition claims.

### B. Damages

Damages are not admitted by default. *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). "Rather, the Court determines the amount and character of damages to be awarded." *Id*. If, to enter or effectuate judgment, it is necessary to conduct an accounting to determine damages, the court may conduct hearings or make referrals as it deems necessary. Fed. R. Civ. P. 55(b)(2). Damages may be awarded "without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation," as long as "all essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232, 1233 n.13 (11th Cir. 2005) (quoting *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (a hearing is unnecessary if sufficient evidence is submitted to support the request for damages).

Here, RBI seeks a permanent injunction under Sections 7.4.3 and 12.6 of the Franchise Agreements and under 15 U.S.C. § 1116(a). RBI also seeks $12,038.58 in attorneys' fees and $484.75 in costs and attaches the Affidavit of Gennifer Bridges, Esq. (RBI's counsel) and the Declaration of Reasonableness of Attorneys' Fees by Jonathan Sykes, Esq. (an attorneys' fees expert) to its motion for default judgment (Docs. 28-1, -2).

### 1. Permanent Injunction

Plaintiff is entitled to permanent injunctive relief against Waste Management. Under 15 U.S.C. § 1116(a), federal courts have the power to grant injunctions "according to the principles of equity and upon such terms as the court may deem reasonable." A plaintiff is entitled to a permanent injunction if the plaintiff succeeds on the merits of his or her claims and the equities favor injunctive relief. *PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F.Supp.2d

14

1213, 1223 (S.D. Fla. 2004).  The equities favor injunctive relief if the plaintiff demonstrates: (1) he or she has suffered irreparable injury; (2) remedies available at law (such as monetary damages) are inadequate to compensate for the injury suffered; (3) the balance of hardships favors an equitable remedy; and (4) issuance of an injunction would not disserve the public interest.  *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Injunctive relief is an available remedy even in default judgment cases and can be awarded to a plaintiff without a hearing.  *PetMed Express*, 336 F. Supp. 2d at 1217; *see also Nygard v. Jasper*, No. 8:15-cv-1939-T-33EAJ, 2016 WL 9526666, at *5 (M.D. Fla. Jan. 4, 2016) ("Even in a default judgment case, injunctive relief is appropriate pursuant to the Lanham Act and common law"), *report and recommendation adopted,* 2016 WL 9526575 (M.D. Fla. Jan. 25, 2016).

Taking Plaintiff's well-pleaded allegations as true, a permanent injunction is warranted.  First, as explained above, RBI has succeeded on the merits of its claims.  Second, RBI has shown it has suffered irreparable injury. According to RBI, "Waste Management continues to use its redbox+ trademarks and trade dress while operating its business and causing havoc . . . Waste Management's activities will cast the redbox+ brand in a negative light." (Doc. 11 at 12).  Put differently, consumers will continue to associate Waste Management with RBI, when RBI no longer has control over Waste Management's services and use of its marks.  For example, Fumei seems to hold the unfounded belief that his bankruptcy filing shields Waste Management from RBI's termination of the Franchise Agreements; he has admitted plans to continue operating Waste Management despite termination; Waste Management has illegally dumped trash on private property while using RBI's mark; and a Waste Management truck bearing a redbox+ logo was involved in a hit-and-run accident.

RBI has shown that Waste Management's post-termination, unauthorized use of RBI's marks and trade dress injures its interest in maintaining exclusive control over the symbols of its own reputation. *See Music with Mar., LLC v. Mr. Froggy's Friends, Inc.*, No. 8:20-cv-1091-T-33TGW, 2020 WL 6395293, at * 11 (M.D. Fla. Aug. 4, 2020), *report and recommendation adopted*, 2020 WL 6393851 (M.D. Fla. Sept. 1, 2020). And "the most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190-91 (11th Cir. 2005) (citation and quotation omitted). A damages award cannot meaningfully compensate for this harm. *Music with Mar., LLC*, 2020 WL 6395293, at *11 (citing *Ferrero v. Assoc. Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991)); *see also Chanel, Inc. v. Mesadieu*, No. 6:08-cv-1557-Orl-31KRS, 2009 WL 2496586, at *8 (M.D. Fla. Aug. 12, 2009) ("The immediate, ongoing violation of Chanel's right to exclude third parties from using their protected trademarks is not compensable through monetary remedies."); *Hunter Residential Servs., LLC v. AAA Randpro Plumbing, Inc.*, No. 8:16-cv-1311-CEH-TGW, 2017 WL 1987247, at *9 (M.D. Fla. Feb. 21, 2017) (finding monetary damages inadequate to compensate plaintiff's previous and future losses because of "[t]he possibility of future infringement by [defendant], and the seemingly unknowable extent of that infringement"); *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) ("[I]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement"); *Nat'l Staffing Sols., Inc. v. Young Holdings and Inv.*, No. 8:20-cv-1011-T-02JSS, 2020 WL 6587246, at *2 (M.D. Fla. Aug. 13, 2020) ("Absent entry of a permanent injunction,

a plaintiff's goodwill will be irreparably harmed by the continued sale of goods that are mistaken for the plaintiff's authorized products.") (citation and quotations omitted).

Third, the balance of hardships favors RBI.  Waste Management's potential loss of the revenue generated by its infringing conduct is outweighed by the threatened ongoing injury to Plaintiff.  Last, issuing an injunction is in the public's interest because it will prevent the confusion created by Defendants' infringing marks.  Plaintiff is entitled to a permanent injunction.

### 2.  Attorneys' Fees and Costs

#### a.  Entitlement

RBI requests an award of attorneys' fees and costs against Waste Management.  Under the "American Rule," litigants generally are not entitled to an award of attorneys' fees for prevailing in litigation unless provided by statute or contract.  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010); *In re Martinez*, 416 F.3d 1286, 1288 (11th Cir. 2005); *see also SNA, Inc. v. Array*, 173 F.Supp.2d 347 (E.D. Pa. 2001), *aff'd*, 43 F. App'x 486 (3d Cir. 2002) (finding contract provision to recover attorneys' fees in event of breach enforceable under Pennsylvania law).

Here, both the Franchise Agreements and the Lanham Act authorize fee shifting.  Under Section 4.4 of the Franchise Agreements, Waste Management agrees to pay RBI's "reasonable attorneys' fees, court costs and litigation expenses" if RBI engages an attorney to collect Waste Management's unpaid amounts or to enforce RBI's rights in the event of Waste Management's "breach or default of any non-monetary material obligation[.]" (Franchise Agmt. at § 4.4).  RBI is also entitled to its attorneys' fees and costs under 15 U.S.C. § 1117(a),

which contemplates an award of attorney's fees to the prevailing party in "exceptional cases."[9] To qualify as an "exceptional case" under the Lanham Act "requires only that a case 'stands out from others,' either based on the strength of the litigating positions or the manner in which the case was litigated." *Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018) (finding that exceptional cases standard from Patent Act applies to cases brought under Lanham Act) (quoting *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).  In deciding whether a case is exceptional, courts consider the totality of the circumstances, including "'frivolousness, motivation, objective unreasonableness (both in factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence[.]'" *Sub-Zero, Inc. v. Schuster*, No. 18-20890-Civ-Scola, 2018 WL 8369106, at * 5 (S.D. Fla. Sept. 4, 2018) (quoting *Octane Fitness*, 572 S. Ct. at 554, n.6).

"There is no precise rule or formula for making these determinations," and courts have broad discretion in finding what constitutes an "exceptional case." *Octane Fitness*, 572 U.S. at 554 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).  Generally, in the Eleventh Circuit, "exceptional cases" are those where the infringing party acts in a "malicious, fraudulent, deliberate, or willful manner." *Tobinick*, 884 F.3d at 1118 (citation omitted).  A case may be deemed "exceptional" and merit an award of attorney's fees when the defendant disregards legal proceedings and does not appear. *See, e.g., TracFone Wireless, Inc. v. Cabrera*, 883 F.Supp.2d 1220, 1227 (S.D. Fla. 2012) (collecting cases); *Trove Brands, LLC v. JH Studios, Inc.*, No. 8:19-cv-1809-KKM-AAS, 2021 WL 7501178, at *7 (M.D. Fla. Jul. 21, 2021), *report*

---

[9]  "Costs of the action" may be awarded under the Lanham Act for violations of 15 U.S.C. § 1125(a).  *See* 15 U.S.C. § 1117(a).  Because the statute does not specify which costs are recoverable, the Court is limited by 28 U.S.C. § 1920.  *See Nat'l Staffing*, 2020 WL 6587246, at *2 (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987)).

*and recommendation adopted*, 2021 WL 7501179 (M.D. Fla. Aug. 6, 2021); *Deltona Transformer Corp. v. Odes Indus. LLC*, No., No. 6:20-cv-527-Orl-40GJK, 2020 WL 6829200, at *8 (M.D. Fla. Oct. 1, 2020), *report and recommendation adopted*, 2020 WL 6828948 (M.D. Fla. Oct. 22, 2020); *but see 24-7 Bright Star Healthcare, LLC v. Brightstars Helping Hands LLC*, 2023 WL 5566570, at *5 (M.D. Fla. Jul. 24, 2023) (noting that a defendant's failure to respond does not make a case exceptional, otherwise every default case would warrant attorney's fees), *report and recommendation adopted*, 2023 WL 5205726 (M.D. Fla. Aug. 14, 2023).

Here, the circumstances are "exceptional" and support an award of attorneys' fees and costs under 15 U.S.C. § 1117(a). By virtue of Waste Management's default, its actions are deemed willful. *See PetMed Express*, 336 F.Supp.2d at 1220. Waste Management's willful infringement, disregard of these legal proceedings, and failure to defend or otherwise participate in this action has led to unjustified delays and forced RBI to incur increased costs and fees. RBI's allegations in its Amended Complaint establish that, despite its termination of the Franchise Agreements, Waste Management "is continuing its business operations and wrongfully using the redbox+ trademarks, trade names, and trade dress." (Doc. 10 at ¶ 25). At the hands of Waste Management, RBI has suffered "monetary damages and irreparable reputational and other damages" (*Id.* at ¶ 30), and Waste Management's continued use of RBI's protected marks is "likely to deceive or confuse the public into believing" that Waste Management is affiliated with RBI (*Id.* at ¶ 32-33). Indeed, Fumei wrote in emails to RBI (attached to RBI's Amended Complaint) that he intends to keep operating and "there is nothing [RBI] can do about it." (Doc. 10-5 at 4). And he "will continued to operate the business and in the meantime, sell the business or liquidate all assets before you can do anything." (*Id.* at 2). The totality of the circumstances supports assessing attorneys' fees and

costs against Waste Management. *See Simple Minds Ltd.*, 2023 WL 6121901, at *7 (awarding fees in a default scenario for an "exceptional case" under § 1117(a)).

### b. Amount of Fees and Costs

RBI requests $12,038.58 in attorneys' fees and $484.75 in costs (Doc. 28 at 6). In support, RBI submits Attorney Gennifer Bridges's affidavit, her firm's invoices from February 2023 through August 2023, and the declaration of Attorney Jonathan Sykes, a Middle District of Florida attorney whom Plaintiff retained as an attorneys' fees expert (Docs. 28-1, -2). The party requesting attorney's fees must provide evidence supporting the hours worked and rates claimed. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A court may award attorney's fees based only on affidavits in the record. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (citations omitted). The lodestar analysis applies for determining reasonable attorney's fees in trademark infringement cases. The lodestar is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Eckerhart*, 461 U.S. at 433.

Three timekeepers billed to RBI's case: Attorney Bridges, Attorney Peter Vilmos, and Paralegal Mariah Jett. Attorney Bridges represents she was admitted to the Florida Bar in 2009. She states her customary hourly rate is $475, but she charged Plaintiff the discounted rate of $425 per hour as a courtesy (Doc. 28-1 at 3-4). This is a reasonable rate for an attorney with almost 15 years of experience litigating in the Tampa market, absent objection. *See Carlo Bay Enter., Inc. v. Two Amigo Rest., Inc.*, No. 8:14-cv-1989-T-33TGW, 2015 WL 58664, at *2 (M.D. Fla. Jan. 5, 2015) (hourly rate of $425 reasonable in Lanham Act case); *MWR Holdings, LLC v. Acad. of Tampa, Inc.*, No. 8:14-cv-1325-T-30MAP, 2014 WL 5590998, at *1 (M.D. Fla.

Nov. 3, 2014) (hourly rates between $400 and $475 reasonable given the respective attorneys' experience and the market rate in Tampa).

Attorney Peter Vilmos also worked on RBI's case; Attorney Bridges attests he is a litigation partner at her firm (Burr & Forman LLP), was admitted to the Florida Bar in 1996 (and before that practiced in Illinois), and is a certified mediator (Doc. 28-1 at 4).   Attorney Vilmos's hourly rate is $565, which is reasonable absent objection, considering the Court's knowledge of market rates and Attorney Vilmos's almost 30 years of experience litigating in Tampa.  *See Am. Airlines, Inc. v. In Charge Mktg., Inc.*, No. 2:10-cv-467-FtM-29SPC, 2011 WL 13294632, at *3 (M.D. Fla. Mar. 21, 2011) (in "exceptional" infringement case, accepting partner's hourly rate of $565 as reasonable in absence of objection).   Last, Paralegal Jett charges $230 per hour.   Although Attorney Bridges attests she has "extensive experience in various types of civil and commercial litigation[,]" there is no further explanation of her experience or support for her higher-than-market hourly rate (Doc. 28-1 at 4).   The Court finds that Paralegal Jett's $230 per hour rate is unreasonable and should be reduced to $125 per hour.  *See Kelly v. Lee Cnty. R.V. Sales Co.*, 2021 WL 3111553, at *3 (M.D. Fla. Jul. 22, 2021) (reducing paraprofessional's hourly rate from $275 to $125 due to lack of evidence of her experience or instances where she was compensated at higher rate).

Attorney Bridges submitted time sheets and invoices through August 31, 2023, showing she worked 21.6 hours on this matter, Attorney Vilmos worked 0.9 hours, and Paralegal Jett worked 1.6 hours (Doc. 28-1).   The Court finds the number of hours expended to be reasonable.  *See Norman*, 836 F.2d at 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without

the aid of witnesses as to value."); *see also Hepsen v. J.C. Christensen & Assoc., Inc.*, 394 F. App'x 597, 599–600 (11th Cir. 2010).  Finally, Attorney Bridges attests she anticipates spending an additional 4.0 hours moving for a default judgment and asks the Court to include this time in a fees award (Doc. 28-1 at 4-5).  The Court's review of the invoices, however, show that Attorney Bridges already billed 4.9 hours in August 2023 to preparing RBI's motion for default judgment and the attorneys' fees affidavit (*Id.* at 28).  Four *additional* hours is unreasonable; the undersigned does not recommend awarding RBI attorneys' fees for the 4.0 additional hours that Attorney Bridges anticipates spending but has not yet.

The Court recommends awarding RBI $9,888.50 in attorneys' fees with this break down:  $9,180.00 for work performed by Attorney Bridges (21.6 x $425.00 = $9,180.00); $508.50 for work performed by Attorney Vilmos (0.9 x $565.00 = $508.50); and $200.00 for work performed by Paralegal Jett (1.6 x $125.00 = $200.00).

Finally, RBI seeks to recover the $402.00 filing fee and $82.75 in service of process costs, for a total of $484.75 in costs.  Both the filing fee and the service of process costs are taxable costs.  *See* 28 U.S.C. § 1920. Therefore, the Court finds that RBI is entitled to $484.75 in costs.

## IV.   CONCLUSION

After weighing the appropriate factors, it is **RECOMMENDED**:

(1) Plaintiff's Motion for Default Judgment (Doc. 28) be **GRANTED in part and DENIED in part**.

(2) A permanent injunction be entered, and Defendant be enjoined from:

  a.  Operating its business in the five territories covered by the Franchise Agreements; and

      b.   Utilizing redbox+ trademarks and/or trade dress.

(3) Plaintiff be awarded $9,888.50 in attorneys' fees and $484.75 in costs.

**IT IS SO REPORTED** in Tampa, Florida, on October 5, 2023.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings and recommendations or request an extension of time to do so. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. Failure of any party to timely object in accordance with the provisions of § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1.